IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SLEP-TONE ENTERTAINMENT CORPORATION**,

        Plaintiff,

        v.

**GRILLHOUSE, INC.**, an Oregon Corporation,  d/b/a **HAPPY HOURS**, and **MICHELLE C. LESH** and **MATHEW S. LESH**, individuals,

        Defendants.

_____

**Civ. No. 6:13-cv-02016-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff Slep-Tone Entertainment Corporation (Slep-Tone) brings this action alleging federal and state trademark infringement,  15 U.S.C. § 1114, ORS § 647.095 (seeking remedies under ORS § 647.105), federal unfair competition,  15 U.S.C. § 1125, and common law passing off. This Court granted plaintiff's motions for entry of default, ECF No. 19 and 21. Plaintiff now seeks, in a motion for default judgment, ECF No. 32, statutory damages in the amount of $10,000.00, attorney fees in the amount of $6,302.00, costs of $510.00, and injunctive relief.

      This Court is asked to consider: (1) whether plaintiff's alleged injuries are redressable under trademark law; and (2), if redressable, whether plaintiff is entitled to damages, attorney fees and costs. Because plaintiff's alleged injuries are redressable under trademark law and plaintiff is entitled to damages, attorney fees and costs, this Court GRANTS plaintiff's motion for default judgment, ECF No. 32.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of alleged trademark infringement. Plaintiff Slep-Tone is a business that obtains licenses to copyrighted songs to create derivative works packaged and branded as "Sound Choice®" products marketed to the karaoke industry. Compl. 1, 3–4, 6, ECF No. 1. Plaintiff owns the "Sound Choice" trademark and associated "Sound Choice" display trademark, and a distinctive trade dress.[1] *Id.* at 3.

Plaintiff alleges that defendants[2] were in possession of and regularly used unauthorized media-shifted and format-shifted duplicates of karaoke accompaniment (KA) tracks that were falsely marked with plaintiff's trademarks and distinctive trade dress. *Id.* at 5–11.[3] Although plaintiff does authorize media-shifting and format-shifting under certain controlled circumstances, it alleges that defendants did not receive such authorization. *Id.* at 8, 11. As a result, plaintiff alleges that the KA tracks used by defendants were degraded and inferior to plaintiff's original KA tracks. *Id.* at 7–9, 11.

Defendants Michelle Lesh and Mathew Lesh initially submitted answers in letter form to this Court on December 9, 2013. On March 21, 2014, this Court ordered defendants to comply with discovery requirements. In July and August 2014, this Court entered default against all defendants. Because default has been issued, plaintiff's allegations are presumed to be true

---

[1] Plaintiff owns United States trademark registration numbers 1,923,448 and 4,099,052 for "SOUND CHOICE," United States trademark registration numbers 2,000,725 and 4,099,052 for a display trademark containing a visual representation of the phrase "Sound Choice," and Oregon trademark registration number 42675 for the mark "SOUND CHOICE" for use with "Entertainment in the nature of karaoke." Compl. 3, ECF 1.
[2] Defendant Grillhouse Inc. formerly operated a business under the name HAPPY HOURS. *Id.* at 2. Defendants Michelle and Mathew Lesh owned and/or managed HAPPY HOURS. *Id.* at 3.
[3] For purposes of this case, a media-shift occurs when compact disk (CD) files are copied to other media such as a hard disk drive. *Id.* at 7. Likewise, a format-shift occurs when CD files are converted to a different format, such as from CD+G format to MP3G format or WAV+G format. *Id.*

except as they related to damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted).

## STANDARD OF REVIEW

Pursuant to FRCP 55(b)(2), this Court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). This Court, in exercising its discretion, may consider the factors outlined in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citations omitted). Those factors include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits

*Eitel*, 782 F.2d at 1471–72.

## DISCUSSION

Plaintiff contends that: (1) its alleged injuries are redressable under trademark law; and (2) if redressable, it is entitled to damages, attorney fees, and costs. Plaintiff moves for default judgment.

## I. Plaintiff's Trademark Claims

Plaintiff contends that defendants violated its protected trademarks by using counterfeit "Sound Choice" branded KA tracks at defendants' bar to provide karaoke entertainment services for the benefit of their customers. *See* Compl. 11, ECF No. 1. The only response of record, an amicus brief submitted by Stephen Joncus, contends that plaintiff's alleged injuries are not redressable under trademark law. Stephen Joncus' Amicus Brief 2–3, ECF No. 36-1 (citing *Slep-Tone Entm't Corp. v. Canton Phoenix Inc.*, No. 3:14-CV-764-PK, 2014 WL 5824787 (D. Or.

3 – OPINION AND ORDER

Sept. 4, 2014) (Canton Phoenix F&R), *findings and recommendation adopted in part and modified in part*, 2014 WL 5817903, at *4 (D. Or. Nov. 7, 2014) (Canton Phoenix)).

To prevail on a claim of trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), or state trademark infringement under ORS § 647.095 (seeking remedies under ORS § 647.105),[4] a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation and internal quotation marks omitted); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 8 (9th Cir. 1999) (concluding that analysis under trademark infringement and unfair competition is "oftentimes identical"). Because plaintiff has a protectable ownership in the marks, *see supra* note 1, this Court's inquiry will focus on the consumer confusion prong.

"The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) (citation and internal quotation marks omitted). To assess this likelihood, this Court considers the eight

---

[4] A claim for trademark infringement under ORS § 647.095 and a claim for trademark infringement under 15 U.S.C. § 1114 are subject to a similar, if not identical test. *See Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*, 73 Or. App. 732, 736–42 (1985) (assessing state and federal trademark claims under a single analysis); *see also Voltage Pictures, LLC v. Doe No. 1 (IP 98.246.58.231)*, Civil Nos. 6:14–cv–812–MC, 6:14–cv–816–MC, 2014 WL 2830845, at *2 (D. Or. June 20, 2014) (noting that a "plaintiff asserting trademark infringement in violation of ORS § 647.095 (seeking remedies under ORS § 647.105), must show that defendants' use of the trademark created a *likelihood of confusion*." (citations omitted)); *Newport Pac. Corp. v. Moe's Sw Grill, LLC*, No. 05–995–KI, 2006 WL 2811905, at *11 (D. Or. Sept. 28, 2006) ("Plaintiff's federal and state statutory claims for trademark infringement . . . all require that there is a likelihood of confusion."); *Interstellar Starship Servs. v. Epix, Inc.*, 125 F. Supp. 2d 1269, 1272 (D. Or. Jan. 3, 2001) (finding that a claim for Oregon trademark infringement is assessed under "exactly the same" test as a claim for federal trademark infringement).

*Sleekcraft*[5] factors. *See Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1110 (9th

Cir. 1999). Those non-exhaustive factors include:

> [1] strength of the mark;
> [2] proximity of goods;
> [3] similarity of the marks;
> [4] evidence of actual confusion;
> [5] marketing channels used;
> [6] type of goods and the degree of care likely to be exercised by the purchaser;
> [7] defendant's intent in selecting the mark; and
> [8] likelihood of expansion of the product lines.

*Network Automation*, 638 F.3d at 1145.

In this district, there is some disagreement as to whether defendants' behavior is

sufficient to satisfy the consumer confusion prong. In *Slep-Tone Entm't Corp. v. Astoria Baker,*

*LLC*, for example, a default judgment was issued under seemingly identical circumstances. No.

6:13-cv-2021-TC, at 8 (D. Or. May 15, 2014).[6] This outcome is consistent with other opinions

issued within this district,[7] and those issued outside of this district.[8]

In contrast to these cases, in *Canton Phoenix*, Judge Mosman concluded "that Slep-Tone

has not pled any actionable trademark injuries, and is in fact alleging copyright injuries." 2014

WL 5817903, at *2. Judge Mosman adopted and modified an earlier issued findings and

---

[5] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds as recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003).
[6] In *Astoria Baker*, plaintiff alleged "that defendants regularly commercially benefitted from use of counterfeit karaoke accompaniment tracks marked with plaintiff's registered trademarks and trade dress while providing karaoke entertainment services to defendant's customers." No. 6:13-cv-2021-TC, at 1.
[7] *See Slep-Tone Entm't Corp. v. Duffy's Irish Pub*, No. 6:13-cv-560-TC, 2013 WL 5774128, at *1 (D. Or. Oct. 23, 2013); *Slep-Tone Entm't Corp. v. Shenanigans Lounge*, No. 6:12-cv-1236-TC, 2013 WL 1768444, at *2, 4 (D. Or. Feb. 22, 2013) (Shenanigans F&R), *findings and recommendation adopted*, 2013 WL 1767727, at *1 (D. Or. Apr. 20, 2013).
[8] *E.g.*, *Slep-Tone Entm't Corp. v. Kelly*, Civil Action No. 3:13-2071-MGL, 2014 WL 4198902, at *1, 3 (D. S.C. Aug. 21, 2014); *Slep-Tone Entm't Corp. v. Coyne*, 13 C 2298, 2014 WL 1848735, at *6 (N.D. Ill. May 8, 2014); *Slep-Tone Entm't Corp. v. Buckmueller*, Civil Action No. 11-4636 (JLL), 2012 WL 818404, at *3–4 (D. N.J. Mar. 8, 2012); *Slep-Tone Entm't Corp. v. Keats Kaoroke*, No. 11 Civ. 4657(PKC), 2011 WL 6057979, at *2 (S.D. N.Y. Dec. 2, 2011); *Slep-Tone Entm't Corp. v. Mainville*, No. 3:11-cv-00122, 2011 WL 4713230, at *3 (W.D. N.C. Oct. 6, 2011).

recommendation (F&R). *See id.* at *4. In that underlying F&R, Magistrate Judge Papak

concluded that based upon precedential case law, Slep-Tone's claim for trademark infringement

sounded "exclusively in copyright." *Canton Phoenix F&R*, 2014 WL 5824787, at *11. Judge

Papak explained:

> First, the presence of Slep-Tone's trademarks at the beginning of each
> track and the display of Slep-Tone's trade dress throughout each track,
> under the reasoning of the *Smith* and *Nintendo* courts, *supra*, is not
> calculated to cause consumer confusion but rather performs the entirely
> appropriate function of correctly identifying the provenance of the tracks.
> Second, defendants' conduct is not of the kind that has been held to
> contravene the Lanham Act; under the reasoning of *Dastar* and *Comedy
> III* courts, *supra*, defendants would infringe upon Slep-Tone's rights if
> they sold karaoke CDs labeled with Slep-Tone's trademarks or advertised
> Canton Phoenix as offering "Sound Choice" karaoke services, but they do
> not infringe Slep-Tone's interest in its marks by copying the tracks or
> performing them publicly.

*Canton Phoenix F&R*, 2014 WL 5824787, at *10. This Court looks to the cases cited above.

In *Smith v. Chanel, Inc.*, Smith "advertised a fragrance called 'Second Chance' as a

duplicate of [Chanel, Inc.'s] 'Chanel No. 5,' at a fraction of the latter's price." 402 F.2d 562,

562–63 (9th Cir. 1968). The single advertisement at issue, published in a trade journal directed to

wholesale purchasers, challenged customers to "try and detect any difference between Chanel #5

(25.00) and Ta'Ron's 2nd Chance. .$7.00." *Id.* at 563. The Court held that Smith's advertisement

could not be enjoined under the Lanham Act "so long as it d[id] not contain misrepresentations

or create a reasonable likelihood that purchasers w[ould] be confused as to the source, identity,

or sponsorship of the advertiser's product." *Id.* The Court remanded for further proceedings. *Id.*

at 570.

In *Nintendo of Am. v. Dragon Pac. Int'l*, Dragon Pacific International (Dragon) sold

"video cartridges that were compatible with Nintendo's [home video game] system." 40 F.3d

1007, 1009 (9th Cir. 1994). Dragon's cartridges contained multiple games, including Nintendo products. *Id.* Dragon also marketed these cartridges as Nintendo's products. *Id.* The Court concluded that Nintendo was entitled to damages under both copyright and trademark, and further explained:

> Nintendo's claims were not . . . based on the same wrongful act. If Sheng[9] had sold the cartridges without representing that they were Nintendo products, he would have committed the wrong of copyright infringement. Or, if Sheng had represented that the cartridges were Nintendo products, even though they contained no Nintendo games, he would have committed the wrong of trademark infringement. Put together, selling the cartridges may have been one act, but it was two wrongs.

*Id.* at 1010–11.

In *Comedy III Prods. v. New Line Cinema*, New Line Cinema released a film titled *The Long Kiss Goodnight*, which contained a short clip from The Three Stooges' short film, *Disorder in the Court*. 200 F.3d 593, 594 (9th Cir. 2000).[10] Comedy III contended that it had a protectable trademark interest not "in the clip itself, but rather in the name, the characters, the likeness, and overall act of The Three Stooges." *Id.* at 595 (internal quotation marks omitted). The Court concluded that Comedy III failed to demonstrate that the clip was actually a cognizable trademark. *Id.*

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, various parties brought suit against Dastar for trademark violations. 539 U.S. 23, 27 (2003).[11] Beginning in 1995, Dastar purchased eight beta cam tapes of a television series in the public domain, *Crusade in Europe*. 539 U.S. 23, 26 (2003). Dastar, having copied and edited the tapes, released a new video set entitled *World War II Campaigns in Europe*. *Id.* Dastar's edits included: a reduction in length; a

---

[9] George Sheng was the sole proprietor of Dragon. *Id.* at 1009.
[10] The film *Disorder in the Court* was in the public domain. *Comedy III*, 200 F.3d at 595.
[11] Dastar was alleged to have infringed Doubleday's copyright in the book *Crusade in Europe* and sold the new series "without proper credit" to the original series thereby constituting reverse passing off. *Dastar*, 539 U.S. at 27.

new opening sequence; a new credit page; a new final closing; a new chapter-title sequences; new narrated chapter introductions; a retitled original "recap" as "preview," which was moved to the beginning of the series; a removal of references to and images of the book *Crusade in Europe*; and new packaging. *Id.* at 26–27. Dastar subsequently manufactured and sold the new series. *Id.* at 27.

The Court explained that the "gravamen of respondents' claim is that, in marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the [original] television series, Dastar has made a 'false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods.'" *Id.* at 31 (citation omitted). The Court subsequently discussed the phrase "origin of goods" in 15 U.S.C. § 1125(a), and determined that it referred to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37 (citation omitted). As a result, the Court held that because "Dastar was the 'origin' of the products it sold as its own, respondents [could not] prevail on their Lanham Act claim." *Id.* at 38.

As indicated, the *Canton Phoenix* Court determined that the reasoning of *Smith* and *Nintendo* preclude Slep-Tone's argument under the consumer confusion prong. *See Canton Phoenix F&R*, 2014 WL 5824787, at *10. This Court disagrees under the facts particular to this case.[12]

First, plaintiff's allegations appear to fall under *Smith*'s exception to its prohibition on enjoinder under the Lanham Act. That exception provides: advertising may be enjoined if it

---

[12] This Court reiterates that because of the procedural posture of this case, all allegations are presumed to be true. *See Geddes*, 559 F.2d at 560 (citations omitted).

"contain[s] misrepresentations or create[s] a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *Smith*, 402 F.2d at 563. Significantly, the Court discussed Chanel, Inc.'s argument that Smith's "proposed method of distribution invites false representations that both the product and 'methods' of productions have been precisely duplicated." *Id.* at 570. The Court concluded that the findings before it were "not clear," but explained:

> If all of the original product's characteristics are found in the copy, the method by which that result was achieved is of no significance to the purchaser.
>
> We would agree that if appellants really claim less than exact duplication of the qualities inherent in the product itself, it would have been appropriate to require some clarification of the language of their advertisement. But this narrow issue was not presented below . . . .

*Id.* (citation omitted). Plaintiff, analogous to the unraised argument in *Smith*, alleges that defendants offered their customers counterfeit KA tracks that were degraded through unauthorized media-shifting and format-shifting. *See* Compl. 8–9, 12–13, ECF No. 1. The utilization of these counterfeit KA tracks by defendants and their customers created a reasonable likelihood that these same customers would be confused as to the source, identity, or sponsorship of these KA tracks. *See Slep-Tone Entm't Corp. v. Elwood Enters., Inc.*, Case No. 13 C 7346, 2014 WL 1612891, at *3 (N.D. Ill. Apr. 21, 2014) ("[A]ccording to Slep-Tone . . . the counterfeit karaoke accompaniment tracks are degraded from the original quality, such that the high quality of the Plaintiff's karaoke accompaniment tracks is no longer as evident as it is when original media are used . . . . Slep-Tone has sufficiently alleged likelihood of confusion . . . ." (citation and internal quotation marks omitted)).

Second, this Court is not convinced that the reasoning in *Nintendo* precludes plaintiff's degradation argument. As explained in *Nintendo*, the mere sale, or in this case, use of plaintiff's KA tracks without representing that those KA tracks were plaintiff's products constitutes copyright infringement; not trademark infringement. 40 F.3d at 1011. However, plaintiff alleges more than the mere unauthorized use of its KA tracks; defendants are accused of using degraded counterfeit KA tracks bearing plaintiff's registered trademarks and distinctive trade dress. *See* Compl. 11, ECF No. 1. This difference is critical. Defendants, by regularly offering customers degraded KA tracks bearing plaintiff's trademarks, created a reasonable likelihood that these same customers would believe that the counterfeits were actually plaintiff's product. *See Shenanigans F&R*, 2013 WL 1768444, at *3 ("I find a reasonably prudent consumer in the marketplace would likely be confused as to the origin of karaoke accompaniment tracks if they were to falsely bear plaintiff's Sound Choice mark during the Karaoke services.").

The *Canton Phoenix* Court also determined that under the reasoning of *Comedy III* and *Dastar*, the mere copying and public performance of Slep-Tone KA tracks did not constitute trademark infringement. *Canton Phoenix F&R*, 2014 WL 5824787, at *10. Judge Papak explained:

> By way of illustration, because the 1925 silent film The Phantom of the Opera is in the public domain, it is uncontroversial that it may be performed publicly, including for the purpose of commercial gain, and that copies of the 1925 public-domain version of the film (as opposed to more recent re-edits which may be subject to copyright as derivative works) may be (and routinely are) packaged under a new label and sold to the public for commercial benefit, The fact that the public-domain film opens and closes with Universal Studios' registered and still-enforceable trademarks is no obstacle to either public performance or sale of the public-domain film, so long as the packaging or labeling of the medium in which the copy is fixed does not bear the Universal Studios trademark or any information likely to confuse consumers as to whether the repackaged copy is a Universal Studios product. Similarly, here, Slep–Tone's

> registered and enforceable trademarks do not prevent any party from either copying or performing Slep–Tone's karaoke tracks; the rights to copy and to perform are governed by the Copyright Act and not by the Lanham Act.

*Id.* at 11. Upon further consideration, this Court is not persuaded that the reasoning of the cited cases preclude plaintiff's degradation allegations.

As to the cited cases, *Comedy III* and *Dastar*, this Court focuses exclusively on *Dastar*.[13] In *Dastar*, as discussed *supra*, the Court concluded that the Lanham Act did not preclude Dastar from claiming that it had produced *World War II Campaigns in Europe*. 539 U.S. at 38. Put differently, the Lanham Act did not create a cause of action for "the use of otherwise unprotected works and inventions without attribution." *Id.* at 36; *see also Shenanigans F&R*, 2013 WL 1768444, at *3 ("In *Dastar*, the Court held that the Lanham Act does not protect against confusion as to the identity of the author of any idea, concept, or communication."). Judge Papak synthesized this reasoning with additional case law to create the illustration above. However, neither this reasoning nor the illustration apply to the narrow degradation issue before this Court.

Plaintiff does not merely allege that plaintiff used its products without authorization. Instead, plaintiff alleges that its trademarks have been affixed to a *different* product. That *different* product, which is a media-shifted or format-shifted variant of the original Slep-Tone product, created a reasonable likelihood that defendants' customers would be confused as to the source, identity, or sponsorship of this *different* product. As such, this Court declines to preclude plaintiffs's trademark claims under *Dastar* or the illustration provided. *See Shenanigans F&R*,

---

[13] The factual circumstances in Comedy III limit its usefulness. The Court determined that Comedy III failed to prove the existence of a trademark. *Comedy III*, 200 F.3d at 595–96. In contrast, in this matter, the issue is whether defendants' use of the marks is likely to cause consumer confusion.

2013 WL 1768444, at *3 ("I find that *Dastar* does not apply to bar plaintiff's claim for trademark infringement.").

Accordingly, plaintiff has established liability as to its federal trademark claims under 15 U.S.C. §§ 1114 and 1125, and Oregon trademark claim under ORS § 647.105.

Plaintiff also contends that defendants' conduct constitutes common law passing off. Under the common law, "passing off" can be direct or implied. Express passing off is considered the classic form of infringement, and occurs "where the deceived customer buys the defendant[s'] product in the belief that he is buying the plaintiff's." *Sidco Indus. Inc. v. Wilmar Tahoe Corp.*, 768 F. Supp. 1343, 1346 (D. Or. 1991) (citation and internal quotation marks omitted); *see also* 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 25:1, 25:5 (4th ed. 2014). In contrast, "[i]mplied passing off occurs when someone uses a picture or sample of its competitor's product, intentionally impliedly representing that its product is that of its competitor." *Classic Instruments, Inc.*, 73 Or. App. at 745 (internal quotation marks omitted). This Court, having reviewed plaintiff's allegations and briefing on the matter, is unable to determine whether either form of passing off has been established. *See Canton Phoenix F&R*, 2014 WL 5817903, at *12 ("[N]othing in Slep-Tone's allegations could support the conclusion that defendants are in any sense in competition with Slep-Tone in the production, marketing, or sale of karaoke CDs, or that . . . the tracks were defendants' products . . . ."); *Astoria Baker*, No. 6:13-cv-2021-TC, at 3 ("The court cannot determine . . . whether a passing off claim has been established as it is not clearly alleged that defendants' passed off their product as that of plaintiff as opposed to simply using plaintiff's product . . . .").

## II. Damages and Attorney Fees

12 –OPINION AND ORDER

Plaintiff seeks: (A) damages under 15 U.S.C. § 1117 and ORS § 647.105; (B) attorney fees under 15 U.S.C. §§ 1117, ORS § 20.080, and ORS § 647.105; and (C) injunctive relief under 15 U.S.C. § 1116 and ORS § 647.105.

## A. Damages

Plaintiff seeks damages under 15 U.S.C. § 1117(a) and (c). Pursuant to 15 U.S.C. § 1117(a), plaintiff is entitled to recover: (1) defendants' profits, (2) any damages sustained by plaintiff, and (3) the costs of the action. *See also Astoria Baker*, No. 6:13-cv-2021-TC, at 5. Plaintiff claims between $15,000 and $43,000 in actual lost profits based on "a sampling that indicates 75% of all of defendants tracks are counterfeits, and a minimum estimated number of tracks of 20,000 . . . ." Pl.'s Mot. Default 12, ECF No. 32. Plaintiff's unspecified sample size is insufficient to establish a 75% rate of infringement. *See Astoria Baker*, No. 6:13-cv-2021-TC, at 5 ("[T]he sampling of 11 out of 14 observed tracks is insufficient to establish a 75% rate of infringement."). Thus, this Court declines to award damages under 15 U.S.C. § 1117(a).

Plaintiff also seeks, in the alternative, statutory damages amounting to $10,000 under 15 U.S.C. § 1117(c). Pursuant to 15 U.S.C. § 1117(c)(1)–(2), plaintiff may elect to recover statutory damages in the amount of:

> **(1)** not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> **(2)** if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

As noted *supra*, plaintiff did not identify the relevant sample size, i.e. the number of KA tracks that were observed by plaintiff's investigator. Instead, this Court is required to interpret an ambiguous statement:

13 – OPINION AND ORDER

> The investigator reported that during the observed time 75% of the karaoke tracks that were played during the karaoke services appeared to be based on counterfeit Sound Choice karaoke tracks.

Decl. of Kurt Slep 2, ECF No. 33. As a result of plaintiff's omission, this Court limits its recognition to three counterfeit KA tracks. Accordingly, statutory damages in the amount of $3,000 ($1,000 per KA track) are appropriate.

## B. Attorney Fees and Costs

Plaintiff seeks attorney fees under 15 U.S.C. §§ 1117(a) and (c), ORS § 20.080, and ORS § 647.105(2). Because this Court finds that attorney fees are proper under 15 U.S.C. §§ 1117(a), this Court declines to consider the additional statutory provisions.

Pursuant to 15 U.S.C. §§ 1117(a), this Court may award reasonable attorney fees in "exceptional cases." "While the term exceptional is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). In a default case such as this, plaintiff's allegations of defendants' willful conduct are sufficient to establish entitlement to fees. *Id.*

This Court has an independent duty to review a fee request to determine whether it is reasonable. To make such a determination, this Court proceeds in two steps. First, this Court applies the lodestar method to determine what constitutes a reasonable attorney fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Second, this Court may "then adjust [the lodestar] upward or downward based on a variety of factors." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citations and internal quotation marks omitted).

"Under the lodestar method, [this Court] multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (citations and

14 – OPINION AND ORDER

internal quotation marks omitted). "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). To determine the "reasonable hourly rate to use for attorneys . . . in computing the lodestar amount[,]" this Court looks to the "prevailing market rates in the relevant community." *Gonzalez*, 729 F.3d at 1205 (citations and internal quotation marks omitted). Plaintiff seeks attorney fees at the hourly rate of $312 for 20.2 hours of work performed; totaling $6,302.00. *See* Decl. of Counsel 2–3, ECF No. 34. Upon review, this Court is satisfied that plaintiff's sought hourly rate[14] and hours are reasonable in light of its attorney's "experience, skill, and reputation." *Gonzalez*, 729 F.3d at 1205–206 (citations and internal quotation marks omitted).

"After making that computation, [this Court] then assess[es] whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of [the *Kerr*] factors." *Ballen v. City of Portland*, 466 F.3d 736, 746 (9th Cir. 2006).[15] This Court, having reviewed the *Kerr* factors, declines to further adjust the lodestar computation. *See id.* ("[O]nly in in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees." (citations omitted)).

---

[14] This hourly rate is consistent with the Oregon State Bar 2012 Economic Survey. *See* Oregon State Bar Association, *Oregon State Bar 2012 Economic Survey* 30 (2012), http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf.
[15] In *Kerr v. Screen Extras Guild, Inc.*, the Ninth Circuit identified the "appropriate factors to be considered in the balancing process required in a determination of reasonable attorney's fees." 526 F.2d 67, 70 (9th Cir. 1975). The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skills requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* (citations and internal quotation marks omitted).

Accordingly, plaintiff is awarded attorney fees in the amount of $6,302.00 and costs in the amount of $510.

## C. Injunctive Relief

Plaintiff seeks injunctive relief under 15 U.S.C. § 1116 and ORS § 647.105. Pursuant to 15 U.S.C. § 1116, this Court has authority to grant injunctive relief "to prevent the violation of any right of the registrant of a mark . . . or to prevent a violation under subsection (a), (c), or (d) of section 1125." Because plaintiff has established liability as to its federal trademark claims under 15 U.S.C. §§ 1114 and 1125, this Court enjoins defendants from using plaintiff's marks absent appropriate licensing.

## Conclusion

For these reasons, plaintiff's motion for default judgment, ECF No. 32, is GRANTED. Judgment is awarded in favor of plaintiff as follows:

1. Statutory damages in the amount of $3,000;
2. Attorney fees and costs in the amount of $6,812.00; and
3. Permanent injunction enjoining defendants from using plaintiff's registered trademarks absent appropriate licensing.

IT IS SO ORDERED.

DATED this 30th day of January, 2015.

_____
**Michael J. McShane**
**United States District Judge**

16 –OPINION AND ORDER